# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                    )
NICHOLAS STEWART,                   )
                                    )
              Plaintiff,            )
                                    )
       v.                           )        Civil Action No. 14-0479 (ABJ)
                                    )
SEAN J. STACKLEY,                   )
Acting Secretary of the Navy,       )
in his official capacity,[1]        )
                                    )
              Defendant.            )
                                    )
```

## MEMORANDUM OPINION

Plaintiff Nicholas Stewart is a decorated Captain in the United States Marine Corps who graduated from the U.S. Naval Academy and has been serving continuously on active duty since 2001. He has brought this case under the Administrative Procedure Act to challenge several decisions made by the Navy, and the parties' cross-motions for summary judgment are pending before the Court.

In December 2008, plaintiff was charged with committing aggravated sexual assault, and he was still awaiting his trial by court-martial at the time he would have otherwise been eligible for promotion to the rank of Major. Plaintiff was convicted and incarcerated, but his conviction was later overturned by the United States Court of Appeals for the Armed Forces on double jeopardy grounds. In the wake of those circumstances, plaintiff filed several applications with the Board for Correction of Naval Records seeking corrective action related to the references to the

---

1       Plaintiff's complaint named former Secretary of the Navy Raymond Edwin Mabus, Jr. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor as defendant.

conviction contained in his naval records and the status of his eligibility for promotion, and he also sought other administrative relief related to his pay.

The Court cannot help but observe that after multiple requests for reconsideration and many layers of administrative review, plaintiff was ultimately quite successful in expunging negative information from his military record and resuscitating his career. Nonetheless, he seeks review of three discrete determinations made by or on behalf of the Secretary of the Navy along the way. First, since plaintiff was unable to serve in an aviation assignment during the time he was in custody, he challenges the denial of his request for a waiver of the flying requirement necessary to his continued receipt of Aviation Career Incentive Pay (Count I). Second Am. Compl. [Dkt. # 31] ¶ 57.[2] Second, plaintiff objects to a portion of the final decision made by the Acting Assistant Secretary of the Navy, in which the Acting Assistant Secretary reversed an earlier recommendation made by the Board that plaintiff considered favorable and did not challenge (Counts II and III). *Id.* ¶¶ 53, 59, 61. Third, plaintiff challenges the nature of the remedy crafted by the Acting Assistant Secretary to address his lost promotion opportunities (Count IV). *Id.* ¶ 63.

The parties filed cross-motions for summary judgment. After reviewing the record in accordance with the deferential standard that applies to the review of military decisions, the Court will grant defendant's motion for summary judgment as to Counts II, III, and IV, and deny it in part as to Count I, remanding the decision to deny plaintiff's Aviation Career Incentive Pay flight gate waiver request to the Secretary of the Navy for further consideration and clarification. In light of that ruling, the Court will deny plaintiff's cross-motion for summary judgment as to Counts II, III, and IV, and deny the motion as to Count I as moot.

---

2       Plaintiff filed his original complaint on March 21, 2014. Compl. [Dkt. # 1]. He filed an amended complaint on June 3, 2015, Am. Compl. [Dkt. # 19], and filed his second amended complaint on January 18, 2016. Second Am. Compl.

# BACKGROUND

## I.    The Governing Statutes and Regulations

### A.    The Board for Correction of Naval Records

Pursuant to 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  In most circumstances, "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." *Id.*  Based on this statutory authority, the Secretary of the Navy established the Board for Correction of Naval Records (the "Board") to oversee the "correction of naval and marine records," and promulgated regulations codified in Title 32 of the Code of Federal Regulations to govern correction proceedings. *See* 32 C.F.R. §§ 723.1–723.2.

The  Board's "function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records . . . , to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized."  32 C.F.R. § 723.2(b).  The Board has the delegated authority to take final corrective action on behalf of the Secretary for certain naval records, but it must forward its recommendations to the Secretary when (1) "[c]omments by a proper naval authority are inconsistent with the Board's recommendation," (2) "[t]he Board's recommendation is not unanimous," or (3) "[i]t is a category of petitions reserved for decision by the Secretary of the Navy."  *Id.* § 723.6(e)(1); *see id.* § 723.7(a).  Categories of petitions that are reserved for decision by the Secretary include:  (1) "[p]etitions involving records previously reviewed or acted upon by the Secretary wherein the operative facts remained substantially the same," and (2) "[s]uch other petitions, as, in the

determination of Office of the Secretary or the Executive Director, warrant Secretarial review." *Id.* § 723.6(e)(2).

Once a Board record is forwarded to the Secretary of the Navy for final action, the Secretary may grant or deny relief, or the Secretary may return the record to the Board for further consideration. 32 C.F.R. § 723.7(a). If the Secretary decides to deny relief, "such decision shall be in writing and, unless he or she adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, shall include a brief statement of the grounds for denial." *Id.*; *see id.* § 723.3(e)(4) (describing what is necessary for a "brief statement of the grounds for denial").

After a final decision is reached, a petitioner may seek reconsideration of the decision. *See* 32 C.F.R. § 723.9. "[F]urther consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board." *Id.* "If such evidence or other matter has been submitted, the request shall be forwarded to the Board for a decision." *Id.*

B.    **Promotions**

In order to be considered by a selection board for promotion under 10 U.S.C. § 611(a), the Secretary of the Navy must determine that the officer is "fully qualified for promotion to the next higher grade." 10 U.S.C. § 624(a)(3)(D). In determining whether an officer is "fully qualified for promotion," the Secretary must determine if the officer is "among the officers best qualified for promotion to such grade." *Id.* § 624(d)(2).

"[T]o ensure officers to be promoted [in the Marine Corps] meet the highest standards of conduct," the Commandant of the Marine Corps, Manpower Management Promotion Branch, "in coordination with the Staff Judge Advocate to the Commandant of the Marine Corps . . . manages

the officer promotion adverse process."  Marine Corps Order ("MCO") P1400.31C ¶ 5000,

http://www.hqmc.marines.mil/Portals/135/MCO%20P1400.31C.pdf.   After a promotion board

adjourns, "[a]ll the officers selected by a promotion board are screened for potentially adverse

information . . . to ensure no new information of an adverse nature appears."  *Id.* ¶ 5002.

An officer will not be "fully qualified for promotion," and his promotion may be delayed,

if "there is cause to believe that the officer has not met the requirement for exemplary conduct"

set forth in 10 U.S.C. § 5947,[3] "or [he] is mentally, physically, morally, or professionally

unqualified to perform the duties of the grade for which he was selected for promotion."

*Id.* § 624(d)(2).

The Secretary of Defense has authorized the Secretary of the Military Departments to delay

appointment of an officer on a promotion list pursuant to section 624 or to withhold the name of

an officer from an appointment scroll.  *See* Department of Defense Instr. ("DODI") 1320.14,

Enclosure 3, ¶ 5(e)–(f),  http://www.dtic.mil/whs/directives/corres/pdf/132014p.pdf.   And the

Secretary of the Navy has further implemented section 624 by authorizing that the Secretary may

withhold the name of any officer "with adverse or alleged adverse information" from the

nomination scroll before the scroll is forwarded to the Senate for confirmation via the President.

---

3       10 U.S.C. § 5947 provides:

>       All commanding officers and others in authority in the naval service are
>       required to show in themselves a good example of virtue, honor, patriotism,
>       and subordination; to be vigilant in inspecting the conduct of all persons
>       who are placed under their command; to guard against and suppress all
>       dissolute and immoral practices, and to correct, according to the laws and
>       regulations of the Navy, all persons who are guilty of them; and to take all
>       necessary and proper measures, under the laws, regulations, and customs of
>       the naval service, to promote and safeguard the morale, the physical well-
>       being, and the general welfare of the officers and enlisted persons under
>       their command or charge.

Secretary of the Navy Instr. ("SECNAVINST") 1420.1B ¶ 15(i), http://dopma-ropma.rand.org/pdf /SECNAVINST-1420-1B.pdf. The Marine Corps has also provided instructions related to withholding an officer from nomination. *See* MCO P1400.31C ¶ 5003.

"If the Secretary of the Navy withholds an officer's name from nomination, the officer shall be notified in writing of such action, and be afforded the opportunity to submit a written statement to the Secretary of the Navy . . . ." MCO P1400.31C ¶ 5003(1). After the Commandant of the Marine Corps reviews the officer's statement, the Commandant "will recommend either that the officer be promoted, or that he/she be removed from the promotion list." *Id.* If the Secretary of the Navy decides to promote the officer, "a separate nomination package containing the officer's name shall be forwarded to the Secretary of Defense, the President . . . or the Senate . . . , as appropriate." *Id.* ¶ 5003(2)(a). If an officer's name is removed from the promotion list "by the President or the Secretary of the Navy acting for the President, [the officer] incurs a failure of selection . . . and continues to be eligible for consideration for promotion." *Id.* ¶ 5003(2)(b). "If the officer is recommended for promotion by the next selection board, and the Secretary of the Navy approves the report of the board, the officer's name shall be placed on the promotion list without prejudice." *Id.*

But if an officer "whose name is on a list of officers approved for promotion" under 10 U.S.C. § 624(a) to a position "for which appointment is required by" 10 U.S.C. § 624(c) "to be made by and with the advice and consent of the Senate is not appointed to that grade" within eighteen months, "the officer's name shall be removed from the list." 10 U.S.C. § 629(c)(1), (4). The President may extend the eighteen month promotion eligibility period by an additional twelve months. *Id.* § 629(c)(2).

And when an officer is "considered but not selected for promotion by a selection board convened under section 611(a)," he "shall be considered to have failed of selection for promotion." 10 U.S.C. § 627. If an officer "has failed of selection for promotion" two times, that officer is at risk of discharge. *See id.* § 632.

C.     **Aviation Career Incentive Pay**

An officer entitled to basic pay "is also entitled to aviation career incentive pay . . . for the frequent and regular performance of operational or proficiency flying duty." 37 U.S.C. § 301a(a)(1). This additional pay is "intended to attract and retain officers in a military aviation career." DODI 7730.57, Glossary, Part II (Definitions), http://citeseerx.ist.psu.edu/view doc/download?doi=10.1.1.440.3747&rep =rep1&type=pdf; SECNAVINST 7220.87A, Enclosure (1), ¶ 1, https://doni.daps.dla.mil/Directives/07000%20Financial%20Management%20Services/0 7-200%20Disbursing%20Services/7220.87A.pdf.[4]     Aviation Career Incentive Pay ("ACIP") is "restricted to regular and reserve officers who hold, or are in training leading to, an aeronautical rating or designation and who engage and remain in aviation service on a career basis." 37 U.S.C. § 301a(a)(2). "To be entitled to continuous monthly incentive pay, an officer must perform the prescribed operational flying duties (including flight training but excluding proficiency flying) for 8 of the first 12, and 12 of the first 18 years of the aviation service of the officer." *Id.* § 301a(a)(4). The "screening point at the end of specific periods of aviation service (normally at the 12 and 18

---

4     Both parties cite to SECNAVINST 7220.87, but the Court was unable to locate that instruction. The link defendant provides in its brief directs the Court to the most recent version, SECNAVINST 7220.87A, which was published on February 26, 2016. Def.'s Mot. for Summ. J. [Dkt. # 35] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 35] ("Def.'s Mem.") at 7. This version of the instruction does not appear to differ from the portions of SECNAVINST 7220.87 cited by the parties.

year marks) used to determine eligibility for continuous ACIP" is called a "flight gate." SECNAVINST 7220.87A, Enclosure (1), ¶ 7.

The Secretary of the Navy "may permit, on a case by case basis, an officer to continue to receive continuous monthly incentive pay despite the failure of the officer to perform the prescribed operational flying duty requirements during the prescribed periods of time so long as the officer has performed those requirements" for at least six years of aviation service. 37 U.S.C. § 301a(a)(5); *see also* SECNAVINST 7220.87A ¶ 5(a) ("The Aviation Career Improvement Act of 1989 authorized the Secretary of the Navy . . . to waive ACIP flight gate requirements for aviators who are unable to meet their flying gates due to reasons beyond their control."). This action is typically called a "flight gate waiver." *See generally* SECNAVINST 7220.87A.

An aviation officer will not be eligible for a flight gate waiver if the individual has "voluntarily turn[ed] down a flying opportunity or elect[ed] to move to a non-flying position, which would preclude the possibility of meeting their ACIP requirements." SECNAVINST 7220.87A ¶ (5)(b)(1)(a). And "[i]individuals who have received a previous [] flight gate waiver are generally not considered eligible for a second waiver, except in extraordinary circumstances." *Id.* ¶ (5)(b)(1)(c).

Once a request for waiver has been submitted, the waiver package is routed via the chain-of-command to the Secretary of the Navy. SECNAVINST 7220.87A ¶ 5(b)(3). Once the waiver package is received by the Assistant Secretary of the Navy (Manpower and Reserve Affairs), "the flight gate waiver request package will be reviewed for content, validity, and rationale and forwarded to [the Secretary of the Navy] with a recommendation to approve, disapprove, or to be returned to Navy or Marine Corps for further action." *Id.* ¶ 5(b)(5).

## II.    Plaintiff's Naval Service and Conviction

Plaintiff has served on active duty in the United States Marine Corps since he graduated from the Naval Academy and was commissioned as Second Lieutenant on May 25, 2001.  Second Am. Compl. ¶¶ 5–6.  After completing his basic officer training, plaintiff was assigned to attend Navy flight training, and he received his Naval Aviator's "Wings of Gold" on October 31, 2003. *Id.* ¶ 8.  He was subsequently assigned to train as an AV-8B Harrier pilot, and was then assigned to a Fleet Marine Force Squadron.  *Id.* ¶ 9.  From August 2005 to March 2006, and from July 2007 to January 2008, plaintiff deployed with the 22nd Marine Expeditionary Unit and participated in air combat operations, including Operations Iraqi Freedom and Enduring Freedom.  *Id.* ¶ 10.

However, on December 12, 2008, plaintiff was charged with committing aggravated sexual assault while serving as a Captain in the Marine Corps.  Second Am. Compl. ¶ 14.  Plaintiff's counsel successfully moved for severance of the charge into two separate specifications – one for aggravated assault and one for aggravated sexual assault – and on September 17, 2009, a military panel acquitted plaintiff of the first severed specification of aggravated assault, but convicted him of the second specification of aggravated sexual assault.  *Id.* ¶¶ 21–22.  Plaintiff was sentenced to total forfeiture of pay and allowances, two years confinement, and a dismissal.  *Id.* ¶ 23; Administrative Record [Dkt. # 34] ("AR") 1211.

Plaintiff appealed to the all-military officer Navy-Marine Corps Court of Criminal Appeals, but the court denied plaintiff's appeal on January 31, 2011.  Second Am. Compl. ¶ 26. Plaintiff then petitioned for a grant of review with the United States Court of Appeals for the Armed Forces, which the court granted.  *Id.* ¶¶ 27–28.  On March 6, 2012, the court found that plaintiff's conviction of the same offense for which the court-martial had already acquitted him violated the Double Jeopardy Clause of the Fifth Amendment.  *Id.* ¶ 30.  And on April 23, 2012,

the court set aside plaintiff's conviction and sentence, and dismissed the specification and charge with prejudice.  Second Am. Compl. ¶ 30; AR 431.  Plaintiff was then ordered back to active duty from involuntary appellate leave to his previous duty station at Quantico, Virginia.  Second Am. Compl. ¶ 31.

III.    **Plaintiff's Consideration for Promotion**

In August 2009, after plaintiff had been charged and while he was awaiting trial, he was selected for promotion from Captain to Major.  Second Am. Compl. ¶ 20; AR 233.  Based on his lineal standing, his promotion would have been effective on November 1, 2011.  Second Am. Compl. ¶ 20; AR 1191.

On September 15, 2009, just a few days before plaintiff was convicted, the FY11 U.S. Marine Corps Major Promotion Selection Board recommended plaintiff for promotion to Major. AR 229–32.  However, after the verdict was returned, plaintiff received an adverse fitness report for the period of May 8, 2009 to September 18, 2009.  AR 1380–87.

The Commandant of the Marine Corps approved and forwarded the FY11 U.S. Marine Corps Major Promotion Selection Board Report ("FY11 Selection Board Report") on October 28,

2009, and the Secretary of the Navy did so as well on December 7, 2009. AR 228.[5] In a memo

from the Secretary of the Navy to the Deputy Secretary of Defense on December 7, 2009, the

Secretary of the Navy recommended that the Deputy Secretary of Defense approve the FY11

Selection Board Report, which contained 668 names, and forward the "nomination scroll

containing the names of 663 captains whom [he] recommend[ed] for promotion to the grade of

major." AR 236. In the memo, the Secretary of the Navy specified that he "withheld from the

nomination scroll the names of five selected officers whose files and records contain[ed] adverse

information or potential adverse information." AR 236. Plaintiff's name was one of the five

withheld from the nomination scroll. AR 236, 238.

On December 15, 2009, the Deputy Secretary of Defense approved the FY11 Selection

Board Report, *see* AR 227, and forwarded the nomination scroll to the President with a

recommendation to nominate the 663 officers on the scroll for appointment to the grade of Major.

---

5       Defendant asserts that "[o]n October 28, 2009 . . . the Commandant of the Marine Corps recommended that the Secretary withhold [p]laintiff's name from the FY 2011 USMC Regular Major Promotion scroll." Def.'s Mem. at 9, citing AR 238. AR 238 is a "summary sheet for the FY11 U.S. Marine Corps Major Promotion Selection Board," but there is no date on this document and no indication that the Commandant of the Marine Corps prepared it. Although the Court ordered defendant to supply the Court with a "certified list of contents" of the administrative record, *see* Min. Order (March 16, 2017), defendant's index is of little help to the Court in resolving this sort of discrepancy since defendant merely characterized AR 226–258 as "FY11 Major Regular Promotion Selection Board documents," without any description of the individual records contained within those pages. *See* AR Index [Dkt. # 43] at 4. From the Court's review of the administrative record, the only reference to the date October 28, 2009 is made on AR 228; and the Court interprets this document as reflecting the Commandant's general *approval* of the FY11 Selection Board Report since he signed it under the phrase "[f]orwarded, approval recommended." *See* AR 228. It does not appear that plaintiff was withheld from any nomination scroll until December 7, 2009, when the Secretary of the Navy sent a memo to the Deputy Secretary of Defense specifically stating that he "withheld from the nomination scroll the names of five selected officers," including plaintiff. AR 236, 238; *see also* AR 220 (advisory opinion describing that the Secretary of the Navy's memo informed the Deputy Secretary of Defense that plaintiff's name was being withheld "from the separate and attached nomination scroll" but that "his name remained on the list of selected officers identified in the record of proceedings, which became the approved promotion list").

AR 237. The President then nominated the 663 officers for appointment to the grade of Major and forwarded the nomination scroll to the Senate for confirmation. AR 239–55.

On March 5, 2010, the Marine Corps sent a letter to plaintiff, informing him that his "promotion [had] been withheld" and that he was under consideration for removal from the FY11 Major Promotion List after a "records check revealed potentially adverse information concerning [his] conviction at a General Court-Martial." AR 71. The letter notified plaintiff that he could "submit a response to the promotion withhold" within ten days of his receipt of the letter, and that the information provided "will allow the Commandant of the Marine Corps and the Secretary of the Navy to assess [his] case based on all of the facts and circumstances, including [his] explanation, if any." AR 71–72. An acknowledgement of receipt was included with the letter. AR 71. However, plaintiff claims he never received the letter, Second Am. Compl. ¶¶ 34–35, and the Marine Corps Judge Advocate Division cannot confirm that he did. AR 75 ("We cannot, however, confirm that Captain Stewart ever received this letter.").

While plaintiff was still incarcerated and his promotion was under review, he was not considered for promotion to Major by the FY12 U.S. Marine Corps Major Promotion Selection Board that convened in August 2010. AR 467; *see* 10 U.S.C. § 619(d)(1).

As noted above, plaintiff's conviction was set aside in April of 2012. AR 431; Second Am. Compl. ¶ 30.

On August 6, 2012, plaintiff was considered by the FY 2013 Transition/Conversion Board, which identifies pilots who currently fly the Harrier Jet to transition to flying the Joint Strike Fighter, but he was not selected *See* AR 1199–1200; MCO 1331.2K, http://www.marines.mil/Port als/59/Publications/MCO%201331.2K.pdf?ver=2012-10-11-163603-367.

On August 14, 2012, plaintiff received a letter from the Commandant of the Marine Corps informing him that his name had been removed from the FY11 Major Promotion List "by operation of law." AR 1215; *see* 10 U.S.C. § 629(c). The letter also stated that because he was being removed from the FY11 Major Promotion List, he was "fully eligible for selection by the FY14 Major Promotion Selection Board,"[6] and that if he was "recommended for promotion by the next selection board" and ultimately promoted, he could "request that the Secretary of the Navy grant [him] the same date of rank and effective date on the active-duty list as [he] would have had if [his] name had not been removed from the FY11 Major Promotion List." AR 1215–16. However, the letter also warned that if plaintiff was not recommended for promotion by the FY14 Major Promotion Selection Board, he would be "considered to have twice failed selection for promotion," *id.* at 1216, which would put plaintiff at risk of discharge. *See* 10 U.S.C. § 632.

Plaintiff was considered for promotion to Major by the FY14 U.S. Marine Corps Major Promotion Selection Board on August 21, 2012, but he was not selected for promotion. *See* AR 1177, 1200. On January 4, 2013, plaintiff received a letter from the Commandant of the Marine Corps informing plaintiff that because he "twice failed selection to the next higher grade," he must be "separated" from the Marine Corps no later than July 1, 2013.[7] AR 1428; 10 U.S.C. § 632(a).

---

6       Even though plaintiff's name was removed from the FY11 Major Promotion List, his name was not forwarded to the FY13 U.S. Marine Corps Major Promotion Selection Board held in August 2011 due to an administrative error. AR 223. Upon discovery of this error, the Commandant of the Marine Corp granted plaintiff a FY13 U.S. Marine Corps Major Special Selection Board ("SSB") as relief. AR 223.

7       This sanction was later eliminated and plaintiff has never been forced to separate from the Marine Corps.

After the adverse fitness report documenting plaintiff's conviction was removed from his record,[8] plaintiff was considered for promotion to Major by the FY15 U.S. Marine Corps Major Promotion Selection Board convened in August 2013. *See* AR 135–36. But he was not selected for promotion. AR 135–36. As a result, plaintiff was notified on March 25, 2014 that he faced mandatory separation as of July 1, 2014. AR 904–05.

In August 2014, plaintiff was considered for promotion by the FY16 U.S. Marine Corps Major Selection Promotion Board, but he was again not selected for promotion. AR 277–84.

## IV. Plaintiff's Requests for Administrative Action

### A. First Request to the Board

On June 14, 2012 plaintiff filed an Application for Correction of Military Record with the Board under 10 U.S.C. § 1552. AR 821; Second Am. Compl. ¶ 40. In that filing, supplemented by three additional submissions,[9] plaintiff requested that the Board take the following actions:

- Remove a performance evaluation covering the period of May 8, 2009 to September 18, 2009 that reported the conviction from his official record;

- Remove all other documents reflecting plaintiff's conviction by general court-martial;

---

8    In a letter dated October 4, 2012, the Marine Corps informed plaintiff that his adverse fitness report that documented his general court-martial conviction had been removed from his naval record. AR 1189. A memorandum was inserted in its place, stating that the report had been removed by the Commandant of the Marine Corps, the report could not be made available to selection boards, and boards could not draw any inference as to the nature of the report or the event that may have precipitated it. AR 1189. As discussed in more detail later in this opinion, the Board ultimately concluded that it was appropriate to include this memorandum, or "filler," in plaintiff's naval record. AR 470.

9    Plaintiff filed the first supplement to his application on June 28, 2012. AR 1414. He filed a second supplement on October 16, 2012. AR 1415–17. And on February 12, 2013, plaintiff filed a third supplement to the application. AR 1425–26. Plaintiff also filed an additional request to the Secretary of the Navy on April 10, 2013, asking to be reinstated on the FY11 Major Promotion List or to receive an FY11 Special Selection Board ("SSB"). AR 1165–66.

- Place an administrative filler in the record directing that any promotion board not consider or draw any adverse inference from the gap in plaintiff's official record from May 8, 2009 to September 18, 2009;

- Direct that no information about events leading to plaintiff's trial, conviction, and successful appeal be reported to any agency or Department of Defense personnel for the purpose of calling into question his fitness for future appointments;

- Direct that the DNA sample obtained as a result of the conviction, and any typing of the sample, be destroyed and expunged from the Combined DNA Index System;

- Reinstate plaintiff to the FY11 Major Promotion List, or alternatively, grant plaintiff Special Selection Board ("SSB") consideration for the FY 2011 Major Selection Board and, if necessary, the FY 2012 Major Selection Board;

- Remove plaintiff's deemed failure-of-selection by the FY 2011 Major Selection Board and his failure-of-selection by the FY 2014 Major Selection Board from his naval record;

- Set aside any action to remove plaintiff from active duty on July 1, 2013 based on the failures of selection by the FY 2011 and FY 2014 Major Selection Boards;

- Remove plaintiff's failure-of-selection by the FY 2013 Transition/Conversion Board ("TCB") for F-35 transition from the record and grant him reconsideration by the F-35 Transition/Conversion Board with a corrected record;

- Adjust plaintiff's leave balance for leave lost as a result of plaintiff's conviction; and

- Award plaintiff moving expenses incurred as a result of his incarceration and return to active duty.

AR 464–66; *see* Second Am. Compl. ¶ 42.

While plaintiff's application was pending, the Marine Corps Judge Advocate Division submitted an advisory opinion to the Board. *See* AR 1192–1210. It advised the Board that in its view, plaintiff was entitled to the following relief:

- The adverse fitness report covering the period of May 8, 2009 to September 18, 2009 should be removed from plaintiff's record, and a memorandum addressing the gap in plaintiff's record should be inserted in its stead;

- The failure-of-selection by the FY 2011 and FY 2014 Promotion Selection Boards should be removed from plaintiff's naval record;

- Plaintiff should be considered for promotion by a Special Selection Board ("SSB") for FY 2012 and FY 2013, if necessary;

- The failure of selection by the FY 2013 Transition/Conversion Board ("TCB") should be removed from plaintiff's naval record, and TCB should be directed to reconsider plaintiff once his record is corrected;

- Plaintiff should not be discharged by reason of having twice failed for promotion as a result of the FY 2011 and FY 2014 Major Selection Boards;

- All information regarding the events leading to plaintiff's trial, conviction, and appeal be removed from his record;[10]

- Plaintiff should be reimbursed for the moving expenses he incurred as a result of his sentence if plaintiff produces receipts evidencing such expenses.

*See* AR 1192–1210; AR 1229–30.

### B. The Board's May 23, 2013 Decision

On May 23, 2013, the Board issued its decision on plaintiff's pending application. AR 464–72. It found that plaintiff should not be "reinstated to the FY 2011 Major Promotion List" because "the underlying evidence of misconduct in [plaintiff's] case at least raises a question about his fitness for promotion." AR 469. Similarly, the Board concluded that plaintiff's "deemed failure of selection by the FY 2011 Major Selection Board should stand," that "he was "properly removed from the promotion list by operation of law," and that "his removal constitutes a failure of selection." AR 469. And the Board concluded that "the administrative filler memorandum" that had been "filed in place of the removed fitness report" did not need to be amended because it adequately filled the gap in plaintiff's fitness record. AR 470.

---

10    Although not explicitly addressed in the February 7, 2013 advisory opinion, AR 1196–1210, the Marine Corps Judge Advocate Division clarified that it had "no objection" to the order plaintiff requested: that no information about the events leading to his trial, conviction, and appeal be reported to any agency or Department of Defense personnel for the purpose of calling into question plaintiff's fitness for future appointments. AR 1229–30; *see also* AR 469. However, the Judge Advocate Division also noted that such an order would be unnecessary, as the Judge Advocate Division "will not report the allegations as adverse matters because the court decision caused the [Officers Disciplinary Notebook] to reflect that the allegations were unsubstantiated." AR 1230.

But the Board did find "an injustice warranting partial relief," AR 469, and it recommended the following corrective action:

- Plaintiff's naval record should be corrected by removing the failure-of-selection by the FY 2014 Major Selection Board;

- Any discharge or other action based on plaintiff's failure-of-selection by the FY 2014 Major Selection Board be cancelled and, if necessary, any related documentation be removed from his record;

- Plaintiff should be granted Special Selection Board ("SSB") consideration for the FY 2012 Major Selection Board and, if necessary, the FY 2013 Major Selection Board;

- The Commandant of the Marine Corps letter dated August 14, 2012 should be modified to remove the language "because at the time, you were incarcerated and had lost your military status";

- No information about the events leading to plaintiff's trial, conviction, or successful appeal should be reported to any agency or Department of Defense personnel for the purpose of calling into question his fitness for future appointments;[11]

- Plaintiff's naval record should be corrected by removing his failure-of-selection by the FY 2013 Transition/Conversion Board ("TCB") for F-34 transition, and he should be granted reconsideration for the F-35 TCB with a corrected record;

- Any material or entries inconsistent with or relating to the Board's recommendation should be corrected, removed, or expunged from plaintiff's record and no such entries or material should be added to the record in the future;

- Any materials removed from plaintiff's naval record should be returned to the Board to be retained in a confidential file.

AR 469–72. The remainder of plaintiff's requests were denied. AR 472.

---

11      In its decision, the Board recognized that if current policy remains the same, "it would be unnecessary to direct that no information about [plaintiff's] court-martial be reported for the purpose of calling into question his fitness for future appointments." AR 470. However, the Board decided that "such direction is warranted" because "it is possible that this policy could change." AR 470.

### C. Plaintiff's Request for Waiver of the Months of Operational Flying Requirement for Aviation Career Incentive Pay

On January 9, 2014, plaintiff requested a waiver of the months of flying requirement necessary to achieve the "Gate 1 flight gate" and retain his Aviation Career Incentive Pay. AR 1556–57. In his request, plaintiff provided a summary of flight data, reflecting a total of 72 months of flying out of the required 96. AR 1556.[12] He explained that he had been unable to perform his military duties due to court action that was ultimately set aside because of a violation of his Constitutional rights, and asserted that "an objective person" would conclude that "in the intervening 5 years since [the] court action began, [he] would have been able to accumulate the 23 months of flying duty required" to reach Gate 1. AR 1557.

The Marine Corps endorsed plaintiff's request for a waiver. *See* AR 1554–55. And on February 21, 2014, the Deputy Commandant for Manpower and Reserve Affairs sent an Action Memo to the Secretary of the Navy, through the Assistant Secretary of the Navy (Manpower and Reserve Affairs), "strongly recommend[ing] approval." AR 1551.

On April 11, 2014, the Assistant Secretary of the Navy (Manpower and Reserve Affairs), sent an Action Memo to the Secretary of the Navy requesting that the Secretary disapprove plaintiff's flight gate waiver. AR 1514–15; AR 1547–48. The Assistant Secretary confirmed that plaintiff met the waiver eligibility criteria, but he observed that a review of the file indicated that

---

12    The Court notes that a second version of plaintiff's waiver request appears at AR 1536, and seems to be slightly different. In that version, plaintiff's total months of flying is listed as 73 months. *See* AR 1536. Other documents in the record alternate between 72 and 73 months. *See* AR 1514 (stating that plaintiff had met 72 of the required 96 months of flying and missed the requirement by 24 months); AR 1555 (observing that plaintiff has 73 months of flying on his record). However, whether the accurate number is 72 or 73 months is not before the Court, nor does it influence the Court's decision.

plaintiff was set to be discharged as of July 1, 2014 due to failure-of-selection by the FY11 and

FY15 U.S. Marine Corps Major Promotion Selection Boards. AR 1514; AR 1547.

On April 15, 2014, the Secretary of the Navy disapproved of plaintiff's request for a flight

gate waiver. AR 1513; AR 1550.

### D.        Second Request to the Board

On April 7, 2014, plaintiff filed a second Application for Correction of Military Record,

seeking removal of the FY15 failure-of-selection, and rescission of his upcoming July 1, 2014

discharge based on the two failures-of-selection. AR 139–50. He also sought a FY14 Special

Selection Board ("SSB"). AR 139–50.

The Board granted plaintiff's requested relief on June 26, 2014. AR 135–38. It observed

that plaintiff was considered by the FY15 U.S. Marine Corps Major Promotion Selection Board

with a record "that had been corrected to remove the derogatory information" regarding his court-

martial conviction, but that his record "did not include any clarification that he had not failed of

selection by the FY 2012, 2013 or 2014 Major Selection Board." AR 136. Therefore, the Selection

Board did not have any information before it explaining the difference between plaintiff's seniority

and the remaining officer population, leading to the "logical implication" that he was "passed over

for promotion every year since the FY 11 board." AR 136.

The Board recommended that:

- Plaintiff's naval record should be corrected by removing his failure-of-selection by
  the FY 2015 Major Selection Board;

- Any discharge or other action based in any way on plaintiff's failure-of-selection
  by the FY 2015 Major Selection Board should be cancelled and, if necessary, that
  related documentation be removed from his record;

- The record should be corrected by the insertion of a memorandum indicating that
  plaintiff did not fail-of-selection by the FY 2012, 2013, or 2014 Major Selection
  Board;

- Any material or entries inconsistent with or relating to the Board's recommendation should be corrected, removed, or expunged from plaintiff's record and that no such entries or material should be added to the record in the future;

- Any material removed from plaintiff's naval record should be returned to the Board to be retained in a confidential file.

AR 137–38. The Board also found that plaintiff had not exhausted his administrative remedies regarding his request for SSB consideration for the FY 2014 Major Selection Board, and it instructed plaintiff to apply to the Secretary of the Navy for an FY 2014 SSB. AR 137.

### E. Plaintiff's Request for Reconsideration of the Board's May 23, 2013 Decision

On June 19, 2014, while plaintiff's second application was pending before the Board, plaintiff asked the Executive Director of the Board to reconsider the Board's May 23, 2013 decision. AR 43–46; 32 C.F.R. § 723.9. Specifically, plaintiff renewed his request that the failure-of-selection on the FY11 U.S. Marine Corps Major Promotion Selection Board be removed from his record because it was based on the improper conclusion that plaintiff's name was on a promotion list and removed from that list by "operation of law" pursuant to 10 U.S.C. § 629, and argued for an FY 2012 rather than an FY 2013 SSB. AR 43–46. Plaintiff submitted two supplements to the request for reconsideration on July 22 and 29, 2014. AR 49–65; AR 82–83.

### F. Assistant Secretary of the Navy (Manpower and Reserve Affairs) Reverses Board's May 23, 2013 Decision Regarding Removal of Plaintiff's FY11 Failure-of-Selection

The Board is authorized to take final corrective action on behalf of the Secretary except in certain situations, such as when "[c]omments by proper naval authority are inconsistent with the Board's recommendation." 32 C.F.R. § 723.6(e)(1)(i); SECNAVINST 5420.193 § 6(e)(1)(a), http://navybmr.com/study%20material/secnavinst%205420193.pdf. In that scenario, "[t]he record of proceedings . . . will be forwarded to the Secretary who will direct such action as he or she determines to be appropriate." 32 C.F.R. § 723.7(a). On September 14, 2014, the Assistant

Secretary of the Navy (Manpower and Reserve Affairs) concluded that the Board's May 23, 2013 decision was "contrary to an advisory opinion" and so it should have been "referred to [him] for a final decision." AR 174; *see* 32 C.F.R. §§ 723.6(e)(1)–723.7(a).

Pursuant to his delegated authority and the general authority under 10 U.S.C. § 1552, the Assistant Secretary decided to approve the Board's "findings, conclusions and recommendations except that [he] reverse[d] the [Board's] decision regarding the removal of Captain Stewart's failure of selection (FOS) by the FY 2011 Major Selection Board." AR 174. Therefore, he directed the removal of that failure-of-selection from plaintiff's record. AR 174.

The Assistant Secretary of the Navy stated that he made this decision "as a matter of equity under 10 U.S.C. § 1552," because "Captain Stewart was withheld from the promotion scroll and subsequently removed from the promotion list by operation of law, which resulted in the FY11 FOS," all because of his conviction. AR 174. The Assistant Secretary focused on the fact that "the Marine Corps did not seek a 12-month Presidential extension of Captain Stewart's promotion eligibility period." AR 174. This "would have provided time for the Marine Corps to notify and seek comment from Captain Stewart prior to routing a formal recommendation on his promotion case" to the Secretary of the Navy. AR 174. Thus, according to the Assistant Secretary, plaintiff was unfairly denied the opportunity to comment and the decision not to seek an extension "undermined the statutory due process protections of 10 U.S.C. § 624(d)." AR 174.

As a result of this decision, plaintiff filed a third supplement to his request for reconsideration of the Board's decision on September 17, 2014. AR 152–55. Plaintiff requested that he "have his name placed on a [FY 2011] promotion scroll, approved by the President's designee for promotion and submitted to the Senate for advice and consent." AR 155. And on

February 17, 2015, plaintiff filed a fourth supplement with the Board, asking for the same relief. AR 186–190.

### G. Second Request for Waiver of ACIP Months of Operational Flying Requirement

On November 4, 2014, plaintiff submitted a second request for a waiver of the months of flying requirement. AR 1450–52. Again, members of the Marine Corps endorsed the waiver, AR 1446–49, including the Acting Deputy Commandant for Manpower and Reserve Affairs, who "strongly recommend[ed] approval." AR 1446.

The Assistant Secretary of the Navy (Manpower and Reserve Affairs) sent an Action Memo to the Secretary of the Navy requesting the Secretary to "render a decision" with regard to plaintiff's waiver request. AR 1442–43. He explained that because the FY11 and FY15 failures-of-selection had been removed from plaintiff's record, plaintiff no longer had an "end of active service date," and that plaintiff's "waiver request [was] within norms and appropriate." AR 1442.

On December 12, 2014, the Special Assistant (Legal and Legislative Affairs) to the Secretary of the Navy provided the Secretary with a memorandum that summarized the recommendation received from the Assistant Secretary. AR 1440. The memorandum concluded with a recommendation, but the recommendation itself is redacted from the record. AR 1440.

The Secretary of the Navy disapproved plaintiff's second request for a flight gate waiver on February 12, 2015. AR 1439. In accordance with that decision, he stated that plaintiff's "eligibility for continuous ACIP expired on May 21, 2014," but that he still "may qualify for entitlement to conditional ACIP" under Department of Defense Rule 7000.14-R. AR 1439. The Secretary did not set forth any other reasons for his decision.

### H. The Board's Decision on Plaintiff's Request for Reconsideration of its May 23, 2013 Decision

Before the Board met to decide plaintiff's request for reconsideration, it requested that the Office of the Judge Advocate General (Administrative Law Section) provide an advisory opinion. The Judge Advocate provided the advisory opinion on May 18, 2015, AR 215–84, and the Board served it upon plaintiff, who provided a response on August 24, 2015.  AR 347–72.

On September 3, 2015, the Board asked plaintiff to confirm the issues that he believed were still pending before the Board for reconsideration, and plaintiff's counsel replied via email on the same day, listing the following issues:

- The request to have the "FY11 Selection sent to the Senate as is required by SECNAVINST 1920.1B as a promotion withhold";
- The request to set aside the FY16 failure-of-selection;
- The request to set aside the FY13 SSB failure-of-selection;
- Payment of travel and moving expenses;
- Removal of the Commandant of the Marine Corps' August 14, 2012 memo from the record; and
- The request that the Board fashion an explanation to be placed in the record "that informs the evaluators that his record is unusual through no fault of his own and it is the result of legal error by the Marine Corps."

AR 374.

The Board issued its decision on September 30, 2015, and it began by repeating the list of matters to be reconsidered. AR 6.  It concluded that plaintiff's request warranted partial relief and it recommended to the Secretary of the Navy that:

- The naval record be corrected by removing the "Removal by Operation of Law from the FY11 Major Promotion List" letter dated August 14, 2012; and
- The record be corrected by removing the failure-of-selection by the FY16 Major Selection Board, along with any discharge or other documented actions based on this failure-of-selection.

AR 9–11.  The Board also concluded that plaintiff's "request to be reinstated on the FY11 Major

promotion list and to have his name sent to the Senate as a promotion withhold is not authorized

by law or regulation, and that the Board does not have the authority to recommend that his name

be nominated to the Senate for promotion."  AR 9.  The record of proceedings was then forwarded

to the Secretary of the Navy for final review.  32 C.F.R. § 723.7(a); SECNAVINST 5420.193.

### I.  The 2015 Decision of the Acting Assistant Secretary of the Navy (Manpower and Reserve Affairs)

On December 17, 2015, the Acting Assistant Secretary of the Navy (Manpower and

Reserve Affairs) approved the Board's recommendations on reconsideration of its May 23, 2013

decision in part, and disapproved them in part.  AR 2–5.  He disagreed with the Board's conclusion

that it was unable to offer plaintiff any relief with regard to the FY11 Major Promotion List.  *See*

AR 2.  He found that, pursuant to the broad discretion granted to the Secretary of the Navy to

correct records under 10 U.S.C. § 1552(a)(1), the Secretary could treat plaintiff as if he "had been

extended on the promotion list for an additional 12 months for the period of 1 June 2011 through

31 May 2012."  AR 3.  This would render plaintiff eligible to be recommended for promotion and

to be placed on the nomination scroll, based on a military record now devoid of information

regarding his conviction.  AR 3.

The Acting Assistant Secretary of the Navy also went on to reverse one of the

recommendations the Board previously made in its May 23, 2013 decision.  AR 4.

> Additionally, in light of the requirement for an exemplary conduct
> certification as discussed above, I reverse the Board's previous order at
> recommendation (e) of their 23 May 2013 decision ["That no information
> about the events leading to Petitioner's trial, conviction and successful
> appeal be reported to any agency or Department of Defense personnel for
> the purpose of calling into question his fitness for future appointments."].  I
> find that this provision of relief was not required by the [United States Court
> of Appeals for the Armed Forces] decision nor is it required to remedy the
> error identified above.

AR 4.

In his decision, the Acting Assistant Secretary directed the following corrective actions:

- Plaintiff's naval record would be corrected by removing the "Removal by Operation of Law from the FY11 Major Promotion List" letter dated August 14, 2012;

- Plaintiff's naval record would be corrected by removing any and all failures of selection from any promotion selection board convened after the FY 11 Major Selection Board;

- Plaintiff's naval record would be corrected by removing any discharge or other documented actions based on his failure of selection by the FY16 Major Selection Board;

- Plaintiff's naval record would be corrected to reflect that his promotion eligibility period was extended for an additional 12 months until June 2012 as authorized by 10 U.S.C. § 629(c)(2), and the Commandant of the Marine Corps was ordered to provide plaintiff with appropriate notice of his status and provide plaintiff an opportunity to submit a written statement in accordance with 10 U.S.C. § 624(d)(3);

- The Commandant of the Marine Corps was ordered to submit plaintiff's promotion recommendation to the Secretary, including any written statement submitted by plaintiff in accordance with 10 U.S.C. § 624(d)(3), as he would have if plaintiff had been on the list in March 2012 when the United States Court of Appeals for the Armed Forces set aside the findings and sentence and dismissed with prejudice the specification and charge of his court-martial; and

- Plaintiff was to be reimbursed for his moving expenses.

AR 4.

## V.     Plaintiff's Complaint

On January 18, 2016, plaintiff filed the second amended complaint in this lawsuit, challenging three of the decisions made by the Secretary of the Navy, or one of his designees, under the APA, 5 U.S.C. § 702.  *See* Second Am. Compl.

In Count I, plaintiff claims that the Secretary of the Navy acted arbitrarily and capriciously in denying plaintiff's request for a flight gate waiver because the Secretary articulated no reason for denying the waiver, and the Marine Corps chain of command had recommended approving the waiver.  *See* Second Am. Compl. ¶¶ 56–57.

In Count II, plaintiff alleges that the Acting Assistant Secretary of the Navy acted arbitrarily and capriciously and contrary to law when he purported to "reverse" a final Board corrective action favorable to plaintiff. Second Am. Compl. ¶¶ 58–59. And in Count III, plaintiff asks the Court to issue a declaratory judgment stating that the Acting Assistant Secretary of the Navy's action to "reverse" a final and favorable corrective action taken by the Board was contrary to 10 U.S.C. § 1552(a)(4) and should be set aside. *Id.* ¶¶ 60–61.

In Count IV, plaintiff challenges the decision made by the Acting Assistant Secretary of the Navy setting forth the steps to be taken to remedy plaintiff's promotion position. Second Am. Compl. ¶¶ 62–63.[13]

On March 18, 2016, the Secretary moved for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 35] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 35] ("Def.'s Mem.") at 2. Plaintiff opposed the motion and filed a cross-motion on May 18, 2016. Pl.'s Opp. to Def.'s Mot & Cross-Mot. for Summ. J. [Dkt. ## 36–37] ("Pl.'s Cross-Mot."). On June 16, 2016, defendant filed a combined opposition to plaintiff's cross-motion and reply in support of his motion for summary judgment. Def.'s Opp. to Pl.'s Cross-Mot. & Reply in Further Supp. of Def.'s Mot. [Dkt. ## 38–39] ("Def.'s Cross-Opp."). And on July 18, 2016, plaintiff filed his reply in support of his cross-motion. Pl.'s Reply Mem. in Supp. of Cross-Mot. [Dkt. # 40] ("Pl.'s Cross-Reply").

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment

---

13    In plaintiff's second amended complaint, he seeks a writ of mandamus. Second Am. Compl. ¶ 3. But plaintiff withdrew this claim from consideration. Pl.'s Opp. to Def.'s Mot & Cross-Mot. for Summ. J. [Dkt. ## 36–37] ("Pl.'s Cross-Mot.") at 37.

as a matter of law." Fed. R. Civ. P. 56(a). However, in cases involving review of agency action under the APA, Rule 56 does not apply due to the limited role of a court in reviewing the administrative record. *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law." *Id.* § 706(2)(D). However, the scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a 'rational connection between the facts found and the choice made.'" *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006), quoting *State Farm*, 463 U.S. at 43. Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking." *Id.*,

quoting *State Farm*, 463 U.S. at 48, 52. As long as "the agency's path may reasonably be discerned," a reviewing court will "uphold a decision of less than ideal clarity." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995), quoting *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974).

Decisions of the Secretary of the Navy may be reviewed under the arbitrary and capricious standard of the APA. *Turner v. Dep't of Navy*, 325 F.3d 310, 313–14 (D.C. Cir. 2003). Further, decisions made by the Secretary of the Navy receive additional deference because Congress has given the Secretary of the Navy wide discretion in deciding when to make corrections to military records. *See* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department *when the Secretary considers it necessary* to correct an error or remove an injustice. . . .") (emphasis added); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513–14 (D.C. Cir. 1995). Courts must consider "whether the Secretary's decision making process was deficient, not whether [the] decision was correct." *Kreis*, 866 F.2d at 1511.

## ANALYSIS

I.      **The Secretary of the Navy's denial of plaintiff's second ACIP flight gate waiver was not supported by sufficient reasoning.[14]**

The "arbitrary and capricious" standard requires that an agency examine the record and articulate an explanation for its action, including a "rational connection between the facts found and the choice made." *Leavitt*, 460 F.3d at 6, quoting *State Farm*, 463 U.S. at 43. Here, the

---

14      Plaintiff concedes that "there was a plausible reason not to approve" his first request, and he only challenges the Secretary's decision on the second request. Pl.'s Cross-Mot. at 20.

Secretary simply states, without any explanation or elaboration, that he disapproved plaintiff's request. *See* AR 1439.[15]

Under those circumstances, the Court finds the decision to deny plaintiff's ACIP flight gate waiver to be arbitrary and capricious. The single sentence reporting that in accordance with the appropriate regulations and "after careful review," the Secretary disapproved plaintiff's November 4, 2014 waiver request does not include any information that would enable the Court to conclude that it was the product of reasoned decision making. *Leavitt*, 460 F.3d at 6, quoting *State Farm*, 463 U.S. at 52.

Indeed, the language in the Secretary's decision appears to be taken directly from a "sample" disapproval letter provided in the Secretary of Navy Instructions. SECNAVINST 7220.87A, Enclosure (2). This boilerplate language does nothing to connect the facts in the record to the Secretary's conclusion, and when the Secretary "merely parrots the language of a statute without providing an account of how [he] reached [the] results, [he] has not adequately explained the basis for [the] decision." *Dickson*, 68 F.3d at 1405.

The defense contends now that the Secretary denied plaintiff's request because plaintiff had not flown, or flown sufficient hours, since approximately July 2008, and that the decision is therefore consistent with the intent of 37 U.S.C. § 301a, that a service member actually be engaged in flight duties in order to receive extra pay for flying. Def.'s Mem. at 26. But "courts may not accept [] counsel's *post hoc* rationalizations for agency action." *State Farm*, 463 U.S. at 50, citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). "It is well-established

---

15      Defendant argues that the Court may not have jurisdiction over plaintiff's "flight pay claim, which is essentially a claim for monetary relief and likely exceeds $10,000." Def.'s Mem. at 26 n.7. But as plaintiff points out, and the Court agrees, plaintiff "does not seek payment of flight pay in this action," but rather an "evaluation of the decision-making process of his ACIP" waiver request under the APA. Pl.'s Cross-Mot. at 19 n.10.

that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.*

(citations omitted); *see also Burlington Truck Lines*, 372 U.S. at 169 (observing that an agency's

discretionary order can only be upheld, "if at all, on the same basis articulated in the order by the

agency itself"). Therefore, the Court will remand this decision to the Secretary of the Navy.

Accordingly, the Court will deny defendant's motion for summary judgment as to Count

I, and deny plaintiff's cross-motion for summary judgment as to Count I as moot.[16]

## II.    The Acting Assistant Secretary of the Navy's reversal of part of the Board's May 23, 2013 decision was not contrary to law or regulation.

Plaintiff argues that the December 17, 2015 decision of the Acting Assistant Secretary of

the Navy operated to reverse a favorable Board decision that had already been approved by the

---

[16]    In his cross-motion, plaintiff also challenges the denial of the flight gate waiver request on the grounds that the Secretary of the Navy relied on a recommendation by someone "outside of the designated review chain" – the Special Assistant for Legal and Legislative Affairs – and that this procedural fault made the Secretary's decision arbitrary and capricious or contrary to law. *See* Pl.'s Cross-Mot. at 21. The Administrative Record does contain a short Memorandum to the Secretary from "C.B. Shaw," "LtCol" of the U.S. Marine Corps, which summarizes the position taken by the Assistant Secretary of the Navy (Manpower and Reserve Affairs), who is in the chain of command, and concludes with a "Recommendation" that is redacted.  AR 1440.

Both parties point to the procedures set forth in the Secretary of the Navy Instructions for the submission and evaluation of flight gate waiver requests. *See* SECNAVINST 7220.87A. The instructions include details regarding "waiver package processing," and refer to a "flowchart" that "details the routing process for an ACIP waiver package." *Id.* ¶ 5(b)(3); *id.*, Enclosure (3); AR 1464.  Toward the end of the process, the rules require the Assistant Secretary to forward the waiver request package to the Secretary of the Navy, "with a recommendation to approve, disapprove, or to be returned to Navy or Marine Corps for further action," *id.*, ¶ 5(b)(5), and that appears to have been done in this case.  *See* AR 1442–43.  Plaintiff takes the position that the Special Assistant (Legal and Legislative Affairs) does not appear in the instructions or the flowchart as a designated recipient or reviewer of a request along the way, and that therefore, his memo transmitting the Assistant Secretary's recommendation, along with a recommendation of his own, is improper. Pl.'s Cross-Mot. at 21–23.  Defendant maintains that the Special Assistant was acting in his "capacity as an active duty legal advisor to the Secretary," and that his participation in the chain falls within the permitted category of "administrative screening." *See* Def.'s Cross-Opp. at 5.

The Court need not reach this issue in light of the remand.  However, if the Secretary relies upon the Special Assistant's memorandum as a basis for his final decision on remand, it will be necessary to supply a justification for the redaction.

Assistant Secretary of the Navy (Manpower and Reserve Affairs) on September 4, 2014, and therefore was "precluded by law and regulation." Pl.'s Cross-Mot. at 27. He insists that once the Assistant Secretary of the Navy approved the Board's findings, conclusions, and recommendations in 2014, they "became final and conclusive on all officers" under 10 U.S.C. § 1552(a)(4), and that because plaintiff did not request "reconsideration of those portions" of the May 23, 2013 Board decision, the Acting Assistant Secretary of the Navy "was without legal authority [in 2015] to reconsider the previous corrections that had been effected and approved." *Id.* at 26–27.[17]

But the Secretary of the Navy "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). And section 1552(a) "leaves no doubt that the final decision is to be made by [the Secretary]" rather than the Board. *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986). Moreover, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) has the authority to overrule a decision by the Board. *Strickland v. United States*, 423 F.3d 1335, 1343 (Fed. Cir. 2005) (holding that the Assistant Secretary's decision to overrule the Board recommendation was within the power granted to the Secretary by Congress, and that "Congress granted this power to Secretaries and their designees in all four service branches").

Plaintiff contends that the rule announced in *Strickland* does not apply here because the 2014 decision by the Assistant Secretary of the Navy served to make the Board's decision "final

---

17      Plaintiff also contends that the December 17, 2015 decision was made by Scott Lutterloh, the Principal Deputy Assistant Secretary of the Navy (Manpower and Reserve Affairs), outside of his delegated authority. Pl.'s Cross-Mot. at 23 n.12. Although Mr. Lutterloh assumed the duties of Principal Deputy Assistant Secretary of the Navy (Manpower and Reserve Affairs) on November 1, 2015, the Secretary of the Navy delegated the authority to Mr. Lutterloh to also serve as the Assistant Secretary of the Navy (Manpower and Reserve Affairs) in a letter dated October 14, 2015. Ex. A to Def.'s Cross-Opp. [Dkt. # 38-1]. The delegation letter specifically authorized him to perform all of the duties of the Assistant Secretary of the Navy (Manpower and Reserve Affairs). *See id.*

and conclusive" on all officers, and that the Board's intervening recommendations in response to plaintiff's many requests for reconsideration did not change the "final and conclusive" nature of the Board's initial recommendation "that no information about the events leading to [plaintiff's] trial, conviction and successful appeal be reported to any agency or Department of Defense personnel for the purpose of calling into question his fitness for future appointments." Pl.'s Cross-Mot. at 24, 26–27, quoting AR 471. However, plaintiff has not provided the Court with any authority to support his contention that the Acting Assistant Secretary of the Navy cannot reverse a previous Board decision just because an intervening request for reconsideration did not put a *specific* part of the Board's initial decision at issue. And plaintiff's theory is at odds with the broad grant of discretion contained in section 1552(a).

The regulations governing reconsideration of a prior Board decision provide that "[a]fter final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board." 32 C.F.R. § 723.9. It is true that plaintiff only requested reconsideration of certain portions of the Board's May 23, 2013 decision. AR 13; AR 374. But nothing in the regulations prevent the Board, or the Acting Assistant Secretary of the Navy upon review of the Board's recommendations, from considering other aspects of a decision under reconsideration in light of intervening events. Such a prohibition could lead to contradictory findings and recommendations, and would be inconsistent with the purpose behind reconsideration.

Moreover, reconsideration is reserved for situations that arise "after final adjudication." So plaintiff's argument that the Acting Assistant Secretary of the Navy did not have the authority to reverse part of the original Board decision because it was "final" is not persuasive. As defendant puts it, when plaintiff requested reconsideration, he put the 2013 Board "decision at issue," Def.'s

Mem. at 27, and the Acting Assistant Secretary of the Navy then had the authority to overrule the decision by the Board and to make the final decision with respect to corrections made to plaintiff's military records. *See* 10 U.S.C. § 1552(a); *Strickland*, 423 F.3d at 1343.

Most important, section 1552(a) plainly places no temporal limitations on the Secretary's authority to act, since he "may" correct *any* record "when" he "considers it necessary." *See Kreis*, 866 F.2d at 1514 ("While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* . . . .'"), quoting 10 U.S.C § 1552(a).

Accordingly, the Acting Assistant Secretary of the Navy did not act arbitrarily and capriciously by acting contrary to law. So the Court will grant defendant's motion for summary judgment as to Counts II and III, and deny plaintiff's cross-motion for summary judgment as to Counts II and III.

### III. The Acting Assistant Secretary of the Navy's decision regarding the promotion process was not arbitrary and capricious.

Plaintiff was largely successful in achieving the objective of his dogged administrative efforts to revive his military career. But he challenges the form of relief the Acting Assistant Secretary of the Navy prescribed in his December 17, 2015 decision, arguing that the remedy was arbitrary and capricious. Pl.'s Cross-Mot. at 35; Second Am. Compl. ¶ 63. While the Acting Assistant Secretary directed that plaintiff be placed back on track for promotion, plaintiff complains that the decision to "resume" plaintiff's promotion process as if he was on the FY11 Major Promotion List through May 2012 was based on "arbitrary and capricious decision-making" on the grounds that it incorrectly perpetuates "the fiction that [p]laintiff was on 'the

promotion list' and that he was removed by operation of law." Pl.'s Cross-Mot. at 29–30.

Plaintiff insists that he was never on a "promotion list," and that he, to this day, remains on the

FY11 Selection Board Report and is eligible for promotion. *Id.* at 33.

However, whether the Acting Assistant Secretary's decision was correct on the merits is

not the question before the Court. *Kreis*, 866 F.2d at 1511. Rather, the issue to be decided is

whether his "decision making process was deficient." *Id.* Moreover, "the question whether a

particular action is arbitrary or capricious must turn on the extent to which the relevant statute,

or other source of law, constrains agency action." *Id.* at 1514. And here, "the broad grant of

discretion . . . does substantially restrict the authority of the reviewing court to upset the

Secretary's determination." *Id.* Because the Court can discern the Acting Assistant Secretary's

decision making process, and the record supports the decision, the Court holds that the decision

was not arbitrary and capricious.

First, the Acting Assistant Secretary discussed and agreed with the observations made by

the former Assistant Secretary in his September 4, 2014 memorandum.

> [I]t was an injustice to not provide Captain Stewart with the opportunity to
> seek a 12-month Presidential extension authorized by 10 U.S.C. § 629 as
> well as to fail to provide the statutory due process protections of 10 U.S.C.
> § 624(d), which requires the Secretary to provide a delayed (or withheld)
> officer with notice and opportunity to comment on the basis for the delay or
> withhold prior to taking action on the officer's promotion decision.

AR 2–3 (quotation marks omitted). Then, the Acting Assistant Secretary went on to craft an

appropriate remedy.

> [T]he appropriate remedy for this error was and is to treat [plaintiff] as if he
> had been extended on the promotion list for an additional 12 months for the
> period of 1 June 2011 through 31 May 2012. If [plaintiff] had been
> extended on the promotion list during this period, he would have been on
> the list in March 2012 when the United States Court of Appeals for the
> Armed Forces (USCAAF) issued its decision to set aside the findings and
> sentence and dismiss with prejudice the specification and charge of his

Court-Martial . . . . Under these circumstances, and pursuant to the Department practices at the time, the Commandant of the Marine Corps (CMC) would have been required to resume the promotion process by making a promotion recommendation to the Secretary of the Navy.

AR 3.

The Acting Assistant Secretary's further explanation of how the recommendation process would have proceeded after this twelve month extension sheds light on why he believed his decision was an appropriate remedy. *See* AR 3. He reasoned that if plaintiff had been extended on the promotion list for an additional twelve months, the Commandant of the Marine Corps would have followed the due process protections of 10 U.S.C. § 624(d), and also would have performed a review of the officer's personnel record. AR 3. Plaintiff's record would no longer have referred to his conviction because it had been set aside. AR 3. After that review, the Commandant would have made a promotion recommendation to the Secretary of the Navy, who would have decided "to either forward a nomination to the Secretary of Defense . . . or remove the officers' name from the promotion list." AR 3. This remedy was designed to put plaintiff in the position he would have been in had he never been convicted or incarcerated.

Therefore, the Acting Assistant Secretary's remedy was to provide plaintiff with a new opportunity to be recommended for promotion and ultimate nomination, based on his status on the FY11 Major Promotion List and with a military record devoid of information about his conviction. The Acting Assistant Secretary's "path" to this remedy can "reasonably be discerned." *Dickson*, 68 F.3d at 1404, quoting *Bowman Transp., Inc.*, 419 U.S. at 286.

Plaintiff argues that the real error in his promotion process occurred when he was not afforded his due process rights of notice and comment when he was first withheld from the nomination scroll, and that the Acting Assistant Secretary's decision did not truly return him to the *status quo ante* because it assumes that he was on a "promotion list" and properly removed

from that list by operation of law under 10 U.S.C. § 629(c). *See* Pl.'s Cross-Mot. at 34–35. However, the record supports the Acting Assistant Secretary's conclusion that plaintiff was indeed on a promotion list and properly removed by operation of law.

When the Deputy Secretary of Defense approved the Selection Board Report on December 15, 2009, plaintiff was placed on the FY11 Major Promotion List. *See* 10 U.S.C. § 624(a)(1); Exec. Order No. 12,396, 47 Fed. Reg. 55,897 (Dec. 9, 1982) (delegating the President's authority to "approve, modify, or disapprove" a selection board report to the Secretary of Defense);[18] *see also* AR 217 & n.4; AR 220–21; AR 227. And "[a] promotion list is considered to be established . . . as of the date of the approval of the report of the selection board." 10 U.S.C. § 624(a)(1). Therefore, December 15, 2009 was the start date of plaintiff's eighteen month promotion eligibility period, and his eligibility period ended on June 1, 2011. *See id.*; *id.* § 629(c); AR 221. At that time, plaintiff was removed from the FY11 Major Promotion List by operation of law. 10 U.S.C. § 629(c).

Given the record evidence and the Acting Assistant Secretary's detailed explanation, the Court concludes that the Acting Assistant Secretary's decision was supported by the record and

---

18    The Executive Order delegates the authority "vested in the President by Section[] 618(b)(1) . . . of Title 10 of the United States Code, to approve, modify, or disapprove the report of a selection board," to the Secretary of Defense. Exec. Order No. 12,396, 47 Fed. Reg. 55,897 (Dec. 9, 1982). At the time the Executive Order went into effect, Section 618(b)(1) stated: "After his final review of the report of a selection board, the Secretary concerned shall submit the report, with his recommendations thereon, to the Secretary of Defense for transmittal to the President for his approval, modification, or disapproval." *See* Defense Office Personnel Management Act, Pub. L. No. 96-513, § 105, 94 Stat. 2853 (1980). This language was relocated to Section 618(c)(1) in 1986. *See* Goldwater-Nichols Department of Defense Reorganization Act of 1986, Pub. L. No. 99-433, § 402, 100 Stat. 992 (1986). In its research, the Court has found no evidence that the Executive Order has been amended or revoked, and neither party posits that the Executive Order is without force today.

reasoned decision making, and the Court will not second-guess the Acting Assistant Secretary's decision of how best to correct plaintiff's military record. *See State Farm*, 463 U.S. at 43, 52.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment in part as to Counts II, III, and IV, and deny it in part as to Count I, remanding the decision to deny plaintiff's ACIP flight gate waiver request to the Secretary of the Navy. And the Court will deny plaintiff's cross-motion for summary judgment as to Counts II, III, and IV, and deny plaintiff's cross-motion for summary judgment as to Count I as moot.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE: May 1, 2017