UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          |   |                              |
|--------------------------|---|------------------------------|
| NICHOLAS STEWART,        ) |   |                              |
|                          ) |   |                              |
| Plaintiff,               ) |   |                              |
|                          ) |   |                              |
| v.                       ) |   | Civil Action No. 14-0479 (ABJ) |
|                          ) |   |                              |
| RICHARD V. SPENCER,      ) |   |                              |
| *Secretary of the Navy,* ) |   |                              |
| *in his official capacity*, ) |   |                              |
|                          ) |   |                              |
| Defendant.               ) |   |                              |

## **MEMORANDUM OPINION**

Plaintiff Nicholas Stewart, a Captain of the United States Marine Corps, filed this action against the Secretary of the Navy in his official capacity, challenging, among other things, the Secretary's denial of his request for an Aviation Career Incentive Pay ("ACIP") flight gate waiver.[1] On May 1, 2017, the Court ruled that since the Secretary had not set forth the reasons for his action, the Court could not find it to be reasonable and supported by the record. Therefore, it remanded the matter to the Secretary for further consideration and clarification.

On remand, the Secretary again denied plaintiff's flight gate waiver request. Presently before the Court is plaintiff's second motion for summary judgment, in which plaintiff argues that the Secretary acted arbitrarily and capriciously in his denial. Defendant has filed a cross-

---

1   Plaintiff also challenged decisions made by the Acting Assistant Secretary of the Navy, including the decision to reverse recommendations from the Board for Correction of Naval Records and the remedy crafted to address lost promotion opportunities. *See* Pl.'s First Mot. for Summ. J. [Dkt. # 37] at 23–37. This Court upheld these decisions. *See Stewart v. Stackley*, 251 F. Supp. 3d 138, 158–61 (D.D.C. 2017).

motion for summary judgment asserting that the Secretary's decision is entitled to deference, and that it was in accordance with the applicable laws and regulations.

After reviewing the parties' motions, including the attachments thereto, the administrative record, and the relevant authorities, the Court will grant defendant's motion for summary judgment, and plaintiff's motion will be denied. While plaintiff is understandably chagrined by the decision, given all of the circumstances, the Court cannot conclude that there is any basis to overturn this decision that fell within the Secretary's discretion to make.

## BACKGROUND

### I. Governing Law and Regulations

"A member of a uniformed service" is entitled to "aviation career incentive pay . . . for the frequent and regular performance of operational or proficiency flying duty required by others." 37 U.S.C. § 301a(a). Aviation Career Incentive Pay ("ACIP") is "restricted to regular and reserve officers who hold, or are in training leading to, an aeronautical rating or designation and who engage and remain in aviation service on a career basis." *Id.* § 301a(a)(2). Under this statute, "an officer must perform the prescribed operational flying duties . . . for 8 of the first 12, and 12 of the first 18 years of the aviation service of the officer" to be eligible for continuous monthly incentive pay. *Id.* § 301a(a)(4). The "screening point at the end of specific periods of aviation service (normally at the 12 and 18-year marks) used to determine eligibility for continuous ACIP" is called a "flight gate." Secretary of the Navy Instruction 7220.87 ("SECNAVINST") Enclosure (1), ¶ 7.

The Secretary of the Navy "may permit, on a case by case basis, an officer to continue to receive continuous monthly incentive pay despite the failure of the officer to perform the prescribed operational flying duty requirements during the prescribed periods of time so long as the officer has performed those requirements" for at least six years of aviation service.

37 U.S.C. § 301a(a)(5); *see also* SECNAVINST 7220.87 ¶ 4 ("The Aviation Career Improvement Act of 1989 authorized the Secretary of the Navy . . . to waive ACIP flight gate requirements for aviators who are unable to meet their flying gates due to reasons beyond their control."). This action is typically called a "flight gate waiver." *See generally* SECNAVINST 7220.87.

Once a request for a waiver has been submitted, the waiver package is routed through the chain of command to the Secretary of the Navy. SECNAVINST 7220.87 ¶¶ 5(b), (d). Once the waiver package is received by the Assistant Secretary of the Navy (Manpower and Reserve Affairs), "the flight gate waiver request package will be reviewed for content, validity, and rationale and forwarded to [the Secretary of the Navy] with a recommendation to approve, disapprove, or to be returned to Navy or Marine Corps for further action." *Id.* ¶ 5(e).

II.     **Factual and Procedural Background**

The factual and procedural background of this case are laid out in detail in the Court's Memorandum Opinion granting in part and denying in part defendant's original motion for summary judgment. *Stewart*, 251 F. Supp. 3d at 141–55. Therefore, the Court will address the facts only briefly here.

Plaintiff Nicholas Stewart has served in the United States Marine Corps since 2001, when he graduated from the Naval Academy. Second Am. Compl. [Dkt. # 31] ¶¶ 5–6 ("Second Am. Compl.").[2] Between 2005 and 2008, plaintiff participated in air combat operations, including Operations Iraqi Freedom and Enduring Freedom. *Id.* ¶ 10.

On December 12, 2008, while serving as a Captain in the Marine Corps, plaintiff was charged with aggravated sexual assault and aggravated assault. Second Am. Compl. ¶ 14.

---

2    Plaintiff filed his original complaint on March 21, 2014. Compl. [Dkt. # 1]. He filed an amended complaint on June 3, 2015, Am. Compl. [Dkt. # 19], and filed his second amended complaint on January 18, 2016. Second Am. Compl.

3

Plaintiff successfully moved to sever the charges, and he was subsequently acquitted of aggravated assault, but convicted of aggravated sexual assault. *Id.* ¶¶ 21–22. Plaintiff was sentenced to total forfeiture of pay and allowances, two years confinement, and a dismissal. *Id.* ¶ 23. He appealed the conviction to the United States Court of Appeals for the Armed Forces, and the court found that his second trial violated the Double Jeopardy Clause of the Fifth Amendment. *Id.* ¶¶ 27–30. On April 23, 2012, the court set aside the conviction and sentence and dismissed the charge with prejudice. *Id.* ¶ 30.

On January 9, 2014, plaintiff requested a waiver of the flying requirement necessary to achieve the "Gate 1 flight gate" and retain his ACIP. Admin. Record [Dkt. # 34] ("AR") at 1556–57. The request summarized his flight data, showing that he had achieved a total of 72 months of flying ("MOF") out of the necessary 96. AR 1556. On his waiver application, he attributed his inability to meet the flying requirement to the unconstitutional conviction, and stated that but for those circumstances, he "would have been able to accumulate the 23 months of flying duty required" to reach Gate 1. AR 1557. The Marine Corps endorsed plaintiff's request, AR 1554–55, and on February 21, 2014, the Deputy Commandant, Manpower and Reserve Affairs ("M & RA"), sent an action memo to the Secretary of the Navy "strongly recommend[ing] approval." AR 1551. The Assistant Secretary of the Navy (M & RA), though, sent an action memo to the Secretary recommending disapproval of the application, in which he noted that plaintiff was set to be discharged because he twice failed to achieve promotion.[3] AR 1514–15; AR 1547. On April 15, 2014, the Secretary denied plaintiff's request for flight gate waiver. AR 1513; AR 1550.

---

3   According to 10 U.S.C. § 632(a), an officer of the Marine Corps who has twice failed to achieve promotion to the next higher grade must be separated from the Marine Corps. This sanction was later eliminated, and plaintiff has not been forced to separate from the Marine Corps.

4

On November 4, 2014, plaintiff submitted a second request for a waiver of the MOF requirement. AR 1450–52. Again, the Marine Corps endorsed the request, and the Deputy Commandant recommended approval. AR 1446–49. This time, the Assistant Secretary's action memo to the Secretary stated that plaintiff's "waiver request [was] within norms and appropriate," and that plaintiff was no longer facing a discharge. AR 1442–43. But on February 12, 2015, the Secretary of the Navy disapproved plaintiff's second request for a flight gate waiver. AR 1439. The Secretary did not set forth any reasons for his decision. *Id.*

On January 18, 2016, plaintiff filed his second amended complaint in this lawsuit, challenging three decisions made by the Secretary of the Navy, only one of which is relevant here: the claim that the Secretary acted arbitrarily and capriciously in denying the second request for the flight gate waiver. Second Am. Compl. ¶¶ 56–57 (Count 1). Both parties moved for summary judgment. *See* Def.'s Mot. for Summ. J. [Dkt. # 35]; Pl.'s Cross-Mot. for Summ. J. [Dkt. # 37]. After reviewing the record, the Court found that because the Secretary did not provide a "rational connection between the facts found and the choice made," the decision was arbitrary and capricious. *Stewart*, 251 F. Supp. 3d at 156–57. The Court denied defendant's motion for summary judgment as to this count, and on May 1, 2017, remanded the decision to deny plaintiff's ACIP flight gate waiver request to the Secretary of the Navy for further consideration. *Id.*

On December 19, 2017, the Secretary of Navy denied plaintiff's request for ACIP flight gate waiver for a third time. *See* Secretary of the Navy Memo [Dkt. # 56-1] ("Sec'y Memo"). The Secretary found that "approving this request does not meet the needs of the service." *Id.* ¶ 2. He stated that "Captain Stewart's entitlement to ACIP ended when, upon reaching 12 years of service, he had not completed 9 years of prescribed operational flying duties." *Id.* To be eligible

for a waiver, one must have not less than six years of qualifying service, and the Secretary observed that plaintiff had barely met the requirement because he had completed only six years and fifteen days of aviation service. *Id.* Thus, according to the Secretary, plaintiff's qualifying duties are almost three years short of the statutory entitlement to ACIP. *Id.* The Secretary observed that plaintiff's failure to accumulate the necessary experience was not entirely attributable to the pendency of the criminal proceedings, and he pointed to the fact that plaintiff "was not in flight status" between June 5, 2008 and September 18, 2009, and between April 12, 2012 and November 4, 2014.[4] *Id.* ¶ 4. Finally, the Secretary observed that he was not inclined to exercise his discretion to grant a waiver because plaintiff's personnel records revealed that plaintiff has consistently ranked in the bottom two-thirds of his peer group and has been evaluated as performing better than only about 18% of his peers. *Id.* ¶ 5.

On May 24, 2018, plaintiff moved for summary judgment claiming that the Secretary acted arbitrarily and capriciously and contrary to law in rendering his decision. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. [Dkt. # 55] ("Pl.'s Mem."). On June 15, 2018, defendant opposed the motion and filed a cross-motion for summary judgment in its favor. *See* Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. [Dkt. # 56] ("Def.'s Mem.").

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in cases involving review of agency

---

4   These dates flank the time period encompassing plaintiff's sentencing and appeal. On September 18, 2009, plaintiff was sentenced for committing aggravated sexual assault. Second Am. Compl. ¶ 23. Plaintiff was then taken into custody to serve his sentence, during which he started the appeals process. The conviction was dismissed on March 6, 2012. *Id.* ¶ 30. Plaintiff was ordered back to active duty soon after the dismissal. *Id.* ¶ 31.

action under the Administrative Procedure Act ("APA"), Rule 56 does not apply due to the limited role of a court in reviewing the administrative record. *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction," *id.* § 706(2)(C), or "without observance of procedure required by law." *Id.* § 706(2)(D). The scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

An agency's decision is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. The court must, however, "uphold a decision of less than ideal clarity if the

agency's path may reasonably be discerned." *Id.*, citing *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974).

A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a 'rational connection between the facts found and the choice made.'" *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006), quoting *State Farm*, 463 U.S. at 43. Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking." *Id.*, quoting *State Farm*, 463 U.S. at 48, 52.

Decisions of the Secretary of the Navy may be reviewed under the arbitrary and capricious standard of the APA. *Turner v. Dep't of Navy*, 325 F.3d 310, 313–14 (D.C. Cir. 2003). "[T]he broad grant of discretion the Congress gave the Secretary" to evaluate a flight gate waiver application, compels review of such a decision under an "unusually deferential application of the arbitrary or capricious standard of the APA." *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014), citing *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). The Court need only determine "whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1511. "This deferential standard is calculated to ensure that the courts do not become a forum for appeals" for every military member, "a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).

## ANALYSIS

The Secretary's decision to deny plaintiff's request for a flight gate waiver was not arbitrary or capricious, nor was it contrary to law or pertinent regulations. While the Secretary's

previous decision lacked any explanation, AR 1439, here the Secretary has explained in detail why he decided to deny plaintiff's request for a flight gate waiver, and his decision is entitled to great deference. Plaintiff argues, though, that the Secretary's decision should be vacated and remanded for three reasons: 1) the Secretary acted contrary to law, applicable regulations, and this Court's order when he asked the Deputy Commandant for a new recommendation without returning the case to the chain of command; 2) the Secretary erred as a matter of law when he failed to address plaintiff's assignment history; and 3) the Secretary's analysis of plaintiff's personnel records was based on unreliable factors. These arguments fail for the reasons set forth below.

I. **The Secretary was not required to obtain new chain of command endorsements on remand.**

Plaintiff objects to the fact that the Secretary sought a fresh recommendation from the Deputy Commandant (M & RA)[5] after the remand, and he argues that this somehow contravened the Court's order to reconsider plaintiff's request. Pl.'s Mem. at 12–13. But plaintiff does not cite to any rule or support for his contention that the Secretary cannot exercise his discretion to obtain another recommendation from a subordinate to aid in his decision-making process. Indeed, the D.C. Circuit has recognized that a decision-maker may gather additional information on remand. *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 366 (D.C. Cir. 1995) ("[T]here is no principle of administrative law that restricts an agency from reopening proceedings to take new evidence after the grounds upon which it relied are determined by a reviewing court to be invalid."). The Secretary's action here cannot be characterized

---

5 The Court notes that the Deputy Commandant did not actually recommend that the Secretary reject the application; he recommended "[t]hat the Secretary of the Navy reconsider a 12 year ACIP MOF Gate 1 Waiver in the case of Captain Stewart." Encl. 1 to Pl.'s Mem. [Dkt. # 55-1] ("DC Action Memo") at 2.

as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because it is in "the agency's discretion to decide how, in light of internal organizational considerations, it may best proceed upon remand." *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 115 (D.D.C. 2010), citing *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976) (per curiam).

Plaintiff also maintains that if the Secretary determined that "a new endorsement" was required, "then the case should have been returned to the chain of command, which is a required process under regulation." Pl.'s Mem. at 13. Navy regulation states that "packages forwarded to SECNAV for approval must be endorsed by the chain of command." SECNAVINST 7220.87 ¶ 5(d). A plain reading of the regulation indicates that the chain of command requirement is not a requirement that the *Secretary* must fulfill in making his decision. Rather, it is a requirement that the *member* must fulfill before his application can be reviewed by the Secretary. AR 1465. Here, plaintiff fulfilled that requirement, and the package was endorsed by the chain of command. AR 1446–49. Thus, when the Secretary solicited a new recommendation from the Deputy Commandant, he was not obligated to return the case to the chain of command. Further, there is no indication that, in soliciting a new recommendation from the Deputy Commandant, the Secretary did not consider the full record that included the previous endorsements.

Plaintiff also argues that the Deputy Commandant's new recommendation should have been reviewed by the Assistant Secretary.[6] Pl.'s Mem. at 14, citing SECNAVINST 7220.87 ¶ 5(e) ("Once received at [the Assistant Secretary of the Navy], the flight gate waiver request

---

6   It is unclear whether the Assistant Secretary reviewed the recommendation or not, as the Deputy Commandant's action memo was sent to the Secretary of Navy *through* the Assistant Secretary, although the Court has not seen any separate Action Memo from the Assistant Secretary. *See* DC Action Memo at 2.

package will be reviewed for content, validity, and rationale and forwarded to SECNAV . . . ."). This rule appears to address the handling of requests moving up the chain from a member, and it is not clear that it has any applicability to a request that has already proceeded through those channels and has been specifically remanded to the Secretary by a court.

But, even if one were to conclude that the regulations called for a return to the chain of command or to the Assistant Secretary, that error was not prejudicial. The APA requires courts reviewing agency action under the "arbitrary and capricious" standard to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706. As the D.C. Circuit put it, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *PDK Labs., Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

Here, the failure to obtain new endorsements through the chain of command, or to submit the new recommendation through the Assistant Secretary, was not prejudicial error. The record returned to the Secretary on remand contained the original endorsement of plaintiff's chain of command, as well as the approval of the Assistant Secretary. Plaintiff does not specify how returning the application through the chain of command would have changed the result, nor does he identify any reason why the Assistant Secretary needed to weigh in again. And, the Secretary's ultimate decision did not refer at all to the Deputy Commandant's recommendation, to which plaintiff objects. *See generally* Sec'y Memo. The Secretary's decision relied entirely on independent bases for denial, such as the plaintiff's assignments before and after the conviction and reversal (which did not include qualifying flight time), the amount of qualifying time he has served in flight status, and his personnel records. *Id.* ¶¶ 3–5. Thus, review by the Assistant Secretary or the chain of command was "far from essential" to the Secretary's analysis.

11

*New Life Evangelistic Ctr.*, 753 F. Supp. 2d at 113 (finding that an agency's decision to supplement the record with new documents, even if erroneous, was not prejudicial because those new documents were not essential to the agency's analysis); *Pittsburgh & Lake Erie R. Co. v. I.C.C.*, 796 F.2d 1534, 1542–43 (D.C. Cir. 1986) (denying petitioner's claims of prejudicial error because it "would not have changed the result").

In addition, plaintiff has not demonstrated how this asserted procedural error caused him actual prejudice; he only makes the conclusory statement that he has been "substantially prejudiced." Pl.'s Mem. at 13; *see Olson v. Clinton*, 602 F. Supp. 2d 93, 104 (D.D.C. 2009), *aff'd*, 409 F. App'x 359 (D.C. Cir. 2011) (finding no prejudicial error where plaintiff "made only the conclusory argument that the [agency's] decision was 'tainted' by *ex parte* email communications that were not included in the Administrative Record" but did not state how the communications tainted the decision). Therefore, the Court finds that even if the agency committed procedural error, this error was not prejudicial.

## II. The Secretary's alleged failure to address plaintiff's assignment history does not render his decision arbitrary or capricious.

Plaintiff argues that "the Secretary ignored the facts of plaintiff's assignment history and whether the assignments were beyond plaintiff's control." Pl.'s Mem. at 16–17.

First, the record reflects that the Secretary did not ignore the circumstances that kept plaintiff from flying or fail to consider whether the assignments were beyond plaintiff's control. The decision explicitly refers to plaintiff's "conviction and later acquittal of criminal misconduct," and the Secretary did not predicate his decision on any failure to fly during that time period. Sec'y Memo ¶¶ 3–4. He explained that he was not persuaded that plaintiff would have been able to meet the required flight time even without this intervening event. *See id.* ¶ 4

(declining to "speculate about how the Marine Corps would have assigned Captain Stewart" and considering plaintiff's assignments before his sentencing and after the reversal).

Second, it is in the Secretary's discretion to determine whether a flight gate waiver would meet the needs of the service. As prescribed by paragraph 4 of SECNAV Instruction 7220.87, "the Secretary of the Navy (SECNAV), for the needs of the service" is authorized "to waive ACIP flight gate requirements for aviators who are unable to meet their flying gates due to reasons beyond their control." And section 301a(a)(5) states that the Secretary "may permit" such waivers "on a case by case basis." 37 U.S.C. § 301a(a)(5). Plaintiff suggests that because the reasons he could not meet the flight gate were beyond his control, he should have been granted a waiver. But, the statute and regulation do not *require* the Secretary to issue a waiver in such a situation; he may deny an application if it does not meet the needs of the service, so long as he articulates the reasons for the denial. *See Leavitt*, 460 F.3d at 6. The Secretary has done so here.

Furthermore, the Secretary's explanation here does not "run[] counter to the evidence before the agency." Pl.'s Mem. at 17. The Secretary reviewed plaintiff's conviction and the reversal by the appeals court, balanced that information with plaintiff's personnel records and the amount of qualifying flight time he has fulfilled, and found that the circumstances did not warrant a flight gate waiver:

> Given the totality of the facts pertaining to Captain Stewart's ACIP waiver request, I have determined a waiver does not meet the needs of the service, and his request is denied. Captain Stewart barely meets the requirements of [37 U.S.C. § 301a] to submit a waiver request, is nearly three years short of qualifying service for statutory ACIP entitlement, and neither the content of Captain Stewart's waiver request nor the results of my qualitative review of his personnel records provided me with adequate reason to grant a waiver in this case.

Sec'y Memo ¶ 6. The fact that the Secretary did not accord the reversal of plaintiff's conviction the weight that plaintiff believes it is entitled to receive does not render the decision arbitrary or capricious since it was accompanied by a "reasoned evaluation of the relevant information." *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 385 (1989). Plaintiff repeatedly points to the prior recommendations from the Acting Assistant Secretary to approve the application, *see, e.g.*, Pl.'s Mem. at 13, 15, 16, but "[e]ven if another decisionmaker might have reached a contrary result," that does not necessarily signal a "clear error of judgment." *Marsh*, 490 U.S. at 385. Given the level of deference afforded to military decisions, *Roberts*, 741 F.3d at 158, and in the absence of clear error, this Court is bound to uphold the Secretary's decision.

### III. The Secretary's use of plaintiff's personnel records was not arbitrary or capricious.

In making his decision, the Secretary reviewed the personnel records. Sec'y Memo ¶ 5. He found that "Captain Stewart has been consistently ranked in the bottom two-thirds of his peer review group by his reporting seniors," and that "reviewing officers have evaluated him as performing better than only about 18% of his peers." *Id.*

Plaintiff contends that the Secretary's reliance on plaintiff's personnel records was improper because the numerical values the Secretary used to evaluate him were not reliable. Pl.'s Mem. at 17–20. To support this assertion, plaintiff produces a single email from a Lieutenant Colonel Daniel Dowd, who is described as a "subject matter expert[] . . . regarding the efficacy and reliability of the Relative Value markings contained on a Marine's Master Brief Sheet."[7] *Id.* at 18–19. In this email, Lt. Col. Dowd explains that the master brief sheet "tables

---

7    The Master Brief Sheet provides administrative, training, service data about a Marine, including a "Performance Evaluation Summary" which includes reviews from the Reporting Senior and Reviewing Officer. AR 1745.

fail to accurately capture the weight and full meaning of the report." *Id*. at 19. Plaintiff also emphasizes that the "career limbo" that he has been in as a result of the "compounding and cascading effects of his unlawful conviction and imprisonment" has caused his review markings to drop below those of his peers through no fault of his own. Pl.'s Opp. and Reply to Def.'s Mot. for Summ. J. [Dkt. # 58] ("Pl.'s Reply") at 11.

As plaintiff correctly notes, the standard of review applicable here "does not require a reweighing of the evidence, but a determination of whether the conclusion being reviewed is supported by substantial evidence." Pl.'s Mem. at 19, quoting *Walker v. Shannon*, 848 F. Supp. 250, 255 (D.D.C. 1994). By asking this Court to discount plaintiff's personnel records as unreliable based on Lt. Col. Dowd's opinion, plaintiff is essentially asking the Court to evaluate how much weight should be accorded to the personnel records — precisely what it cannot do. *See Ind. Mun. Power Agency v. FERC*, 56 F.3d 247, 254 (D.C. Cir. 1995) ("Once assured the [agency] has engaged in reasoned decisionmaking, it is not for [the Court] to reweigh the conflicting evidence."). In the end, plaintiff's personnel records support the Secretary's discretionary determination, AR 1745, and plaintiff has not submitted or pointed to any other values, indicators, or reports showing that this information is incorrect.[8]

An agency's decision may also "be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider," but there is no indication here that Congress did not intend the Secretary to rely on personnel records. *State Farm*, 463 U.S. at 43.

---

8   Plaintiff also objects to the Secretary's use of these values on the grounds that they were located in a 2017 Master Brief Sheet, and the Secretary should not have considered performance evaluations that were not available at the time of the Secretary's previous denial. Pl.'s Reply at 10–11. But there is no indication that the Secretary used a 2017 Master Brief Sheet, because the values he refers to are also located within a Master Brief Sheet dated March 25, 2015. AR 1743–45. Therefore, it was proper for the Secretary to consider these records.

15

This is the sort of material that would logically inform a decision maker whether the waiver would meet "the needs of the service," and it is reasonable for the Secretary to have relied on them.

While the Court may have come to a different conclusion based upon the Marine Corps' endorsement and other factors, the Court cannot put aside a decision that has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks and citation omitted). The "unusually deferential" standard under which the Court must review the Secretary's decision compels the Court to find that it was within the Secretary's discretion to deny plaintiff a flight gate waiver and to permit the ruling to stand.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's cross-motion for summary judgment and deny plaintiff's motion for summary judgment.

A separate order will issue.

**SO ORDERED.**

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: November 8, 2018